The order below is hereby signed.

Signed: March 18 2021



Elizabeth L. Gunn
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF COLUMBIA

In re:

Anthony M. Rachal, III,
Debtor.

Case No. 19-00197-ELG

Chapter 13

### MEMORANDUM DECISION AND ORDER GRANTING IN PART
### AND DENYING IN PART APPLICATIONS FOR COMPENSATION

The Court has before it the various pleadings filed by Harris S. Ammerman, Esquire ("**Counsel**") counsel for Anthony M. Rachal, III (the "**Debtor**") requesting compensation and reimbursement of expenses in the amount of $12,745.50.[1] For the reasons discussed below, the Court approves compensation in the amount of $8,848.00 and reimbursement of expenses in the amount of $145.00 through December 18, 2020, without prejudice to Counsel's right to file an application for services rendered thereafter.

### I.    Background and Procedural History

On March 27, 2019 (the "**Petition Date**"), the Debtor commenced the instant case by filing a voluntary petition for relief pursuant to Chapter 13 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as hereafter amended, the "**Bankruptcy Code**"). The Debtor's path to a

---

[1] Due to certain formatting discrepancies in the Application (as defined below), the Court's analysis of Counsel's time records totaled 32.3 hours at $395.00/hour, resulting in a total requested fee of $12,758.50, a difference of $158.00.

confirmed chapter 13 plan in this case was neither short nor direct, including the filing of six proposed plans, multiple objecting creditors, motions from relief from stay, and finally confirmation of the fifth amended plan (the "**Confirmed Plan**") at the hearing held November 20, 2020 (the "**Confirmation Hearing**").

Given the lengthy history and docket in the case, it is clear that the issues involved in reaching resolution and obtaining plan confirmation were more involved than a "standard" or "everyday" chapter 13 matter. The complexity of the Debtor's situation was apparently anticipated by Counsel at the outset of the case as evidenced by his *Disclosure of Compensation of Attorney for Debtor* (ECF No. 1) (the "**Initial Disclosure**"), wherein pursuant to Federal Rule of Bankruptcy Procedure 2016(b) (the "**Bankruptcy Rules**," and each individually a "**Bankruptcy Rule**") Counsel disclosed that he had agreed to represent the Debtor in this case for a flat fee in the amount of $7,500.00, of which Counsel received $4,489.00 pre-petition from the Debtor. ECF No. 1, at 45. In response to Question 5 on the Initial Disclosure, Counsel stated that his representation of the Debtor would include, in relevant part:

> In all cases filed in the State of Maryland, legal fees shall be paid in accordance with requirements and limitations of Appendix F. paragraph 4 A, Local Bankruptcy Rules. Under the terms of the fee agreement, counsel hereby agrees to represent the debtor(s) for the duration of the bankruptcy proceeding. Except for cause, the law firm of Ammerman & Goldberg per Harris S. Ammerman, Esq. shall not withdraw his appearance as counsel for the Debtor(s), pursuant to Local Maryland Bankruptcy Rule 9010-5, until this case is closed or a final order of dismissal has been entered.

(the "**Appendix F Language**") *Id.* at 46. Counsel excluded from the flat fee representation of the Debtor in "Adversary proceedings and U.S. Trustee audits." *Id.*

On September 14, 2020, approximately 18 months after the petition date, and prior to the first confirmation hearing on the Confirmed Plan, Counsel filed his *Supplement and Itemization of*

*Legal Services to Application for Allowance of Attorney's Fees to Be Paid as Administrative Priority by the Chapter 13 Trustee* (the "**Amended Application**") requesting services not solely on a flat-fee basis, but on hybrid flat fee and hourly fee basis. ECF No. 95. On October 5, 2020, in response to the Court's order in an unrelated matter, Counsel filed his *Counsel Corrects the Supplemental and Itemization of Legal Services Stated in His Application for Allowance of Attorney's Fees to Be Paid as Administrative Priority by the Chapter 13 Trustee. the Correction Calculates All Entries Are to Be Billed in Increments of 0.1 (Tenth) of an Hour* (the "**Second Amended Application**").[2] ECF No. 100. Due to the inconsistency between the Initial Disclosure and the request for approval of fees on an hourly basis in the Amended Application, on October 21, 2020, the Court issued an order setting a hearing thereon. ECF No. 101. On November 17, 2020, three days prior to the hearing on the Amended Application, Counsel filed an Amended Local Form 10, disclosing for the first time an agreement with the Debtor for compensation on solely an hourly basis and removing the Appendix F Language. (the "**Modified Disclosure**"). ECF No. 103. Counsel also filed a further *Response* in support of the hourly fee request. ECF No. 104.

At the November 20, 2020 Confirmation Hearing, the Court discussed its concerns as to the fees requested in the Amended Application with Counsel and continued the hearing to December 18, 2020 to afford further supplementation and to take the Modified Disclosure under review. Following the Confirmation Hearing, Counsel filed his *Counsel's Memorandum in Reply to Comments Issued by the Court at the Debtor's Confirmation Hearing Regarding Requested*

---

[2] The descriptions for the time entries in the Second Amended Application are identical to the Amended Application, but the amounts of time expended were amended to be reported in tenths of an hour in lieu of quarters of an hour.

*Compensation Referred to in the Fee Disclosure Statement (as Amended by Counsel) Pursuant to Rule 2016(b)* (the "**Memorandum**"). ECF No. 105.

At the continued hearing held on December 18, 2020, the Court recognized that Counsel had the discretion, if consistent with his retention agreement with the Debtor, to modify the form of compensation (i.e., flat v. hourly) during the pendency of the case upon proper disclosure, and prior to applying for fees on the modified basis. In consideration of Counsel's Second Amended Application, the Court welcomed Counsel's offer to supplement his application with respect to the services identified as "Main Case" for which dates and descriptions were provided, but no time entries were included. *See* ECF Nos. 100-1 & 101. Further, the Court advised Counsel that approval of fees, even under a modified disclosure, remains subject to the reasonableness standards found in § 330 prior to approval. After the December hearing, Counsel filed a Praecipe titled *Counsel Supplements and Itemizes Legal Services Stated in His Application for Allowance of Attorney's Fees to Be Paid as Administrative Priority by the Chapter 13 Trustee. the Correction Calculates Legal Services Performed in the Main (Core) Case and All Subsequent Entries for Additional Services Not Part of the Main Case* (the "**Praecipe**," and together with the Memorandum, Application, the Amended Application, and the Memorandum, the "**Application**"). ECF No. 115. Counsel included a copy of the retainer agreement between Counsel and the Debtor (the "**Retainer Agreement**") as an exhibit to the Praecipe, filed in support of the Modified Disclosure and the Application.[3]

---

[3] The Retainer Agreement is not dated; however, the Court infers from the terms and conditions set forth therein that it was executed prior to the Petition Date in this case and has not subsequently been modified. The Court therefore further infers that despite the modification of the disclosure to this Court, in the Modified Disclosure, from a flat fee to an hourly fee, the Retainer Agreement is the only agreement executed between the Debtor and Counsel.

A close review of the Retainer Agreement does not provide the Court with much clarity with respect to the actual fee agreement between the Debtor and Counsel. *See* Retainer Agreement. Specifically, page 1 of the Retainer Agreement discloses a $5,000 "Retainer Fee" but lists "Chapter 13 Fees paid in the Plan: $*tbd.*" *Id.* (italicized language handwritten). The first paragraph on page 2 of the Retainer Agreement contains the following disclosure with respect to fees in a chapter 13 case "our fee will be a flat fee of *tbd*." *Id.* (italicized language handwritten). Appended to the end of the Retainer Agreement, after the Debtor and Counsel's signature, is a section entitled "'The Small Print'" in which Counsel apparently provided itself with a unilateral right to modify the flat fee agreement on Page 2 to an hourly fee agreement: "If during the course of the case we render services worth more than the initial fee, calculated at our normal hourly rate, we may apply to the Court for additional fees, to be paid through the Chapter 13 plan." *Id.* at 4. Further down in "The Small Print," Counsel has added the right to collect an "additional $495.00" from a debtor for attendance at a continued or rescheduled § 341 meeting of creditors if the debtor/client fails to appear on time at a 341 meeting or provide all necessary documents prior to the hearing. *Id.* at 7-8. Finally, "The Small Print" requires disclosures mandated by the Maryland Appendix F followed by the Debtor's signature acknowledging that "I have read and had explained to me the above 'small print' disclosures, agree to fully comply with them, and understand that they form part of the retainer agreement with my attorney." *Id.* Despite the extensive language in the Retainer Agreement and "The Small Print," at no point does Counsel disclose his "normal hourly rate" nor provide any time frame or details on how the "*tbd*" elements will be determined, or if the Debtor ever agreed to such determination. In addition, there is no indication of a flat fee of $7,500.00 despite the inclusion of that amount in the Initial Disclosure. Thus, the only evidence this Court

has in support of the Debtor's consent to Counsel's requested fees in the Application are the representations made by Counsel at the hearings held thereon as a member of the bar of this Court.[4]

## II. Legal Analysis

### A. District of Columbia Rules of Professional Conduct

The Application, Initial Disclosure, and Amended Disclosure are governed both by the Bankruptcy Code and the rules governing attorney-client representation in the District of Columbia. All fees in a bankruptcy case originate with the Retainer Agreement voluntarily entered into between the debtor and attorney. District of Columbia Rule of Professional Conduct 1.5 governs fees, and states in relevant part "When the lawyer has not regularly represented the client, the basis or rate of the fee, the scope of the lawyer's representation, and the expenses for which the client will be responsible shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation". D.C. R. Prof'l Conduct 1.5.[5] Nothing in Rule 1.5 prohibits a counsel from modifying an agreement with a client from a flat fee to an hourly fee in the middle of representation. However, Rule 1.5 does require client consent. *Id.* Once a bankruptcy petition is filed, fees for professionals then also become subject to the Bankruptcy Code and Bankruptcy Rules.

### B. The Court's Duty to Review the Reasonableness of Fee Applications and to Enforce Compliance with Disclosure Provisions

An attorney's filing of a fee application pursuant to Rule 2016(a) does not initiate a contested matter unless a party in interest files an objection. *See United States v. Laughlin* (*In re*

---

[4] The Court recognizes that the Debtor was present at the first hearing on the Application and did not object or otherwise comment on Counsel's requests or representations, but the Debtor did not testify, nor did Counsel proffer any testimony of the Debtor.
[5] Available at https://www.dcbar.org/For-Lawyers/Legal-Ethics/Rules-of-Professional-Conduct/Client-Lawyer-Relationship/Fees (last visited March 18, 2021).

*Laughlin*), 210 B.R. 659, 661 (B.A.P. 1st Cir. 1997) (citing, *inter alia*, Fed. R. Bankr. P. 9014 Advisory Committee Note (1983)); 9 *Collier on Bankruptcy* ¶ 2016.11 (Richard Levin & Henry J. Sommer eds., 16th ed. 2020); 10 *Collier on Bankruptcy* ¶¶ 9014.01-9014.02. *But see In re Park*, Case No. 04–12777–B–7, 2009 WL 330245, at *7 (Bankr. E.D. Cal. Jan. 30, 2009) (citing Fed. R. Bankr. P. 2002(a)(6) & 2016) (finding fee applications over $1,000.00 are contested matters). However, the Court holds a duty to confirm that the requested fee is reasonable under § 330, even where no party raises an objection. *In re Carr,* 613 B.R. at 435 (quoting *In re Ortiz*, 496 B.R. at 148); *In re Ortiz*, 496 B.R. at 148 (citing *Messner v. CommerceBank/Harrisburg, N.A.* (*In re Smith*), 331 B.R. 622, 627–28 (Bankr. M.D. Pa. 2005)); *In re Rheuban*, 121 B.R. 368, 379 (Bankr. C.D. Cal. 1990) (citing *In re Wood*, 210 U.S. 246, 258 (1908)); *In re Inslaw, Inc.*, 106 B.R. 331, 333-34 (Bankr. D.D.C. 1989) (quoting *In re S.T.N. Enters.*, *Inc.* 70 B.R. 823, 831–832 (Bankr. D. Vt. 1987)). This duty has particular relevance with respect to the interest of the debtor, who is typically represented by the very attorney who has concurrently filed the fee application, and who may lack the means, sophistication, or incentive to timely object. *See In re Wood*, 408 B.R. 841, 851 (Bankr. D. Kan. 2009); *In re Robinson*, 368 B.R. at 501 ("The attorney is the one who is knowledgeable about legal fees and the services likely to be required; the client typically is not."); *In re Bryant*, 346 B.R. 406, 410 (Bankr. E.D. Va. 2006) (quoting *In re Courtois*, 222 B.R. 491, 494 (Bankr. D. Md. 1998)); *In re Taylor*, Case No. 03–01393, 2004 WL 1746112, at *2 (Bankr. D.D.C. Aug. 4, 2004) (citing *In re Courtois*, 222 B.R. at 494); *In re Courtois*, 222 B.R. at 494-95 (quoting 3 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 329.01, at 329–4 to –5 (15th ed. rev. 1998) ("[T]he debtor is in a vulnerable position and is highly dependent on its attorney and therefore will be reluctant to object to the fees of the attorney.")). The Court's duty to confirm that

a fee is reasonable under §§ 329 and 330 includes a duty to confirm compliance with § 528 and Rule 2016(b). *See In re Carr,* 613 B.R. at 435-36, 438 (quoting *In re Fair*, Case No. 15-33400-SGJ-13, 2016 WL 3027264, at *13 (Bankr. N.D. Tex. May 18, 2016) and then reviewing compliance with § 528, and then with § 329 and Rule 2016(b)); *In re Davis*, 605 B.R. at 665; *cf. In re Wood*, 408 B.R. at 848, 849-50, 853 (denying fees as excessive in light of compliance failures); *In re Robinson*, 368 B.R. at 500, 502 (reducing fees as excessive in light of vague retention agreement). The Court may examine "any payment of money . . . or any agreement therefor" pursuant to this duty. Fed. R. Bankr. P. 2017(b); *In re Prudhomme*, 43 F.3d at 1003; *In re Riggin*, 40 B.R. 458, 460 (Bankr. D. Md. 1984); *see also In re Cervantes*, 617 B.R. 141, 145 (Bankr. E.D. Cal. 2020); *In re Wood*, 408 B.R. at 847.

### C. Consumer Counsel's Bankruptcy Disclosure Requirements as to Compensation

Section 329(a) of the Bankruptcy Code requires a debtor's attorney to "file with the court a statement of the compensation paid or agreed to be paid . . . and the source of such compensation." 11 U.S.C. § 329(a). Bankruptcy Rule 2016(b) establishes when an attorney must file this statement, and requires a subsequent disclosure "after any payment or agreement not previously disclosed" and that "[a] supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed." Fed. R. Bankr. P. 2016(b). Local Bankruptcy Rule 2016-2 further requires that the disclosure "shall . . . [contain] the additional information elicited by Local Form No. 10." LBR 2016-2.

With respect to an attorney's disclosure to a consumer debtor client whose nonexempt property is less than $204,425 in value, § 528, titled "Requirements for debt relief agencies,"[6] states that:

> (a) A debt relief agency shall—
>
>> (1) not later than 5 business days after the first date on which such agency provides any bankruptcy assistance services to an assisted person, but prior to such assisted person's petition under this title being filed, ***execute a written contract with such assisted person that explains clearly and conspicuously***—
>>
>>> (A) ***the services such agency will provide*** to such assisted person; and
>>>
>>> (B) ***the fees or charges for such services***, and the terms of payment[.]

11 U.S.C. § 528 (emphasis added).

Disclosure under § 329 and the Bankruptcy Rule 2016 is mandatory, not permissive. 11 U.S.C. § 329 (directing that counsel "shall file"); Fed. R. Bankr. P. 2016(b) (directing that counsel "shall file"); *SE Property Holdings, LLC v. Stewart* (*In re Stewart*), 970 F.3d 1255, 1263 (10th Cir. 2020) (citing *Mapother & Mapother, P.S.C. v. Cooper* (*In re Downs*), 103 F.3d 472, 480 (6th Cir. 1996)) ("The attorney's duty of disclosure is that of a fiduciary."); *In re Ortiz*, 496 B.R. at 148 (citing, *inter alia*, *Hale v. U.S. Tr.* (*In re Basham*), 208 B.R. 926, 931 (B.A.P. 9th Cir. 1997)); *In re Whitcomb*, 479 B.R. at 139-40 (citing, *inter alia*, *In re Becker*, 469 B.R. 121, 124-25 (Bankr. M.D. Fla. 2012); and *In re Whaley*, 282 B.R. 38, 41-42 (Bankr. M.D. Fla. 2002)). The requirements

---

[6] Section 101(12A) states "[t]he term "debt relief agency" means any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration." Counsel and his law firm are a debt relief agency. *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 232 (2010).

of § 528 are similarly mandatory. *DeLuca v. Seare* (*In re Seare*), 515 B.R. 599, 621 (B.A.P. 9th Cir. 2014); *In re Negron*, 616 B.R. 583, 593 (Bankr. D.P.R. 2020).

An attorney's Disclosure of Compensation filed with the Court pursuant to § 329 and Bankruptcy Rule 2016(b) must be consistent with the attorney's contract with the debtor under § 528. *See In re Smith*, Case No. 20-01278, 2021 WL 389381, at *10 (Bankr. D.S.C. Jan. 28, 2021) (criticizing inconsistencies); *In re Davis*, 605 B.R. 658, 664 (Bankr. D.N.J. 2019) (raising inconsistencies); *In re Parrilla*, 530 B.R. 1, 10 (Bankr. D.P.R. 2015); *Walton v. Whitcomb* (*In re Whitcomb*), 479 B.R. 133, 140 (Bankr. M.D. Fla. 2012) ("Section 329 . . . mandates disclosure of the full and complete fee agreement."). Further, the attorney's disclosure and retention agreement must also be consistent with any subsequent Application for Compensation that the attorney files under Rule 2016(a). *See In re Smith*, 2021 WL 389381, at *10; *In re Robinson*, 368 B.R. 492, 501 (Bankr. E.D. Va. 2007) (noting inconsistencies); *cf. In re Carr,* 613 B.R. 427, 435 (Bankr. E.D. Ky. 2020) (first quoting *In re Ortiz*, 496 B.R. 144, 148 (Bankr. S.D.N.Y. 2013); and then quoting *Burd v. Walters* (*In re Walters*), 868 F.2d 665, 668 (4th Cir. 1989)) (linking an attorney's duty to file a disclosure statement with the Court's duty to review the attorney's fee application); *In re Courtois*, 222 B.R. at 494-95 (quoting 3 King et al., *supra* ¶ 329.01, at 329–4 to –5 (explaining why the § 329 disclosure is crucial to "enabl[ing] the court to determine if the fees are reasonable.")).

The failure of attorneys to disclose their compensation agreements fully and accurately "is sanctionable and can include partial or total denial of compensation, as well as partial or total disgorgement of fees already paid." *In re Kowalski*, 402 B.R. 843, 848 (Bankr. N.D. Ill. 2009) (citing *In re Prod. Assocs., Ltd.*, 264 B.R. 180, 186, 189 (Bankr. N.D. Ill. 2001)); *see also In re*

*Stewart*, 970 F.3d at 1264 (first citing *Futuronics Corp. v. Arutt, Nachamie & Benjamin* (*In re Futuronics Corp.*), 655 F.2d 463, 470 (2d Cir. 1981), then citing *Law Offs. of Nicholas A. Franke v. Tiffany* (*In re Lewis*), 113 F.3d 1040, 1045-46 (9th Cir. 1997); then citing *In re Downs*, 103 F.3d at 478; and then citing *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.)*, 63 F.3d 877, 882 (9th Cir. 1995)); *Henderson v. Kisseberth* (*In re Kisseberth*), 273 F.3d 714, 720 (6th Cir. 2001), *clarified by* 24 Fed. Appx. 539 (2002) (citing *In re Lewis*, 113 F.3d at 1045-46) ("Even if the bankruptcy court had not determined that Henderson's fees were excessive, however, the disgorgement would still be within the court's discretion in light of the § 329 and Rule 2016(b) disclosure requirements"); *cf. In re Davis*, 605 B.R. at 666 (citing *In re Seare*, 493 B.R. 158, 218 (Bankr. D. Nev. 2013), *aff'd* 515 B.R. 599 (B.A.P. 9th Cir. 2014) ("In instances of §§ 526–528 violations, bankruptcy courts may order fees to be disgorged partially and in their entirety depending on the debtor's willingness to pay anything."). "Indeed, the Courts of Appeal which have addressed this and similar disclosure issues are emphatic in affirming the grant of sanctions." *In re Stewart*, 970 F.3d at 1264 (quoting *In re Redding*, 263 B.R. 874, 880 (B.A.P. 8th Cir. 2001)).

Since full compliance with these disclosure mandates is so central to the integrity of the bankruptcy system, many, if not the majority of, courts hold that complete disgorgement and disallowance of fees is an allowable—and often the proper—sanction for failure to comply, except where a court finds cause for leniency. *See In re Stewart*, 970 F.3d at 1267 ("[F]ull disgorgement . . . for failure to disclose under § 329. . . . should be the default sanction, and there must be sound reasons for anything less."); *In re Kisseberth*, 273 F.3d at 721 ("[B]ankruptcy courts have broad and inherent authority to deny any and all compensation where an attorney fails to satisfy the requirements of the Code and Rules"). Bankruptcy courts generally hold broad discretion in

determining sanctions. *See In re Seare,* 515 B.R. at 615 (quoting *Orton v. Hoffman* (*In re Kayne*), 453 B.R. 372, 386 (9th Cir. BAP 2011) (noting that bankruptcy courts have wide discretion in the context of Rule 9011 sanctions)). But such discretion is typically applied strictly to enforce compliance with disclosure requirements. *See Neben & Starrett, Inc. v. Chartwell Fin. Corp.* (*In re Park–Helena Corp.*), 63 F.3d 877, 882 (9th Cir. 1995) (affirming denial of all fees for willful failure to disclose fee arrangement); *Arens v. Boughton* (*In re Prudhomme*), 43 F.3d 1000, 1003 (5th Cir. 1995) (approving a bankruptcy court's use of its "broad discretion in awarding and denying fees . . . to order disgorgement as a sanction . . . for nondisclosure"). "[T]he bankruptcy court should deny all compensation to an attorney who exhibits a willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement under § 329 and Rule 2016." *In re Lewis*, 113 F.3d at 1045 (quoting *In re Downs*, 103 F.3d at 479); *see also In re Stewart*, 970 F.3d at 1267; *United States v. Schilling* (*In re Big Rivers Elec. Corp.*), 355 F.3d 415, 436-37 (6th Cir. 2004) (reaffirming *In re Downs*, 103 F.3d at 479); *In re Redding*, 263 B.R. at 880 (citing cases affirming significant sanctions from the 1st, 2d, 5th, 6th, 7th, 8th, 9th & 10th Circuits); *Rosen v. Nunez,* Case No. 19-CV-2895, 2021 WL 950056, at *6 (E.D.N.Y. Mar. 12, 2021) (quoting *In re Stewart*, 970 F.3d at 1267) (affirming an order to disgorge a substantial part of the fees paid "as well within the range of permissible decisions" under the facts of that case); *In re Devers*, 33 B.R. 793, 799 (D.D.C 1983) (affirming denial of all compensation for failure to file disclosure statement); *cf. Waldron v. Adams & Reese, L.L.P.* (*In re Am. Int'l Refinery, Inc.*) 676 F.3d 455, 465-66 (5th Cir. 2012) (quoting *Kravit, Gass & Weber S.C. v. Michel* (*In re Crivello*), 134 F.3d 831, 839 (7th Cir. 1998)) (endorsing severe sanctions for willful failures to disclose under Rule 2014).

A court has discretion to impose a lesser sanction where a failure is less egregious, or where the court finds mitigating circumstances that justify leniency. *Anderson v. Anderson* (*In re Anderson*), 936 F.2d 199, 203, 205 (5th Cir. 1991) (rejecting per se approach divesting judges of discretion to impose less than full disgorgement for disclosure violations); *Tex. Comptroller of Pub. Accounts v. Zars* (*In re Zars*), 434 B.R. 421, 434 (W.D. Tex. 2010) (comparing, *inter alia*, *In re Prudhomme*, 43 F.3d at 1002 (willful violation), with *In re Fricker*, 131 B.R. 932, 942-43 (Bankr. E.D. Pa. 1991) (mitigating facts) and affirming a lenient sanction). This Court has also held that failure to accurately disclose is sanctionable. *In re Wilkerson*, Case No. 14–00582, 2016 WL 3402457, at *5 (Bankr. D.D.C. June 13, 2016) (disallowing fees for failure to comply with Rule 2016(b)); *In re GB Herndon & Assocs.*, Case No. 10-00945, 2013 WL 4510590, at *36 (Bankr. D.D.C. Aug. 2, 2013) (imposing sanctions "for not timely filing a Rule 2016(b) statement"); *In re Storey*, Case No. 08–00198, 2009 WL 2855819, at *3 (Bankr. D.D.C. June 29, 2009) (first citing *In re Lewis*, 113 F.3d at 1045; then citing *In re Downs*, 103 F.3d at 477; then citing *In re Park–Helena Corp.*, 63 F.3d at 880; then citing *In re Prudhomme*, 43 F.3d at 1003–04; and then quoting *In re Campbell*, 259 B.R. 615, 627 (Bankr. N.D. Ohio 2001)) (finding that "the court has inherent authority to order a disgorgement of fees when an attorney violates 11 U.S.C. § 329(a)").

In the past, this Court has criticized a switch from representing a debtor under a flat fee agreement to an hourly fee agreement:

> By the current application, the debtors' attorney seeks to have the best of both worlds: to have been assured of receiving $4,500 regardless of the number of hours of work required of him, but now seeking to recover on an hourly fee basis because that results in a greater fee because the case required more hours of work than the typical chapter 13 case. The Rule 2016(b) statement did not append a copy of the representation agreement or otherwise provide any details beyond reflecting an

> agreement for the attorney to handle the entirety of the case for a flat fee of $4,500. An attorney ought not be allowed to change the terms of representation once it becomes apparent that an hourly fee approach is more advantageous. And if the attorney's arrangement with the debtors was not a flat fee arrangement, the Rule 2016(b) statement ought to have disclosed that.

*In re Wilkerson*, Case No. 14–00582, 2016 WL 3402457, at *6 (Bankr. D.D.C. June 13, 2016) (quoting Order Re Debtor's Counsel's Appl. for Allowance of Att'y's Fees at 2-3, *In re Simpson*, Case No. 13–00509 (Bankr. D.D.C. May 9, 2014), ECF No. 76). The same analysis is applicable in this case. Counsel's Initial Disclosure indicated that Counsel was proceeding in this Case under a higher than normal flat fee, subject to Appendix F Language. At some point prior to the filing of the Amended Disclosure, Counsel determined an hourly fee was more advantageous, resulting in the Amended Application and subsequent filings by Counsel. While not timely, Counsel did file the Modified Disclosure reflecting the determination to seek compensation on an hourly basis.

The Court does not condone Counsel's failure to timely file the Modified Disclosure, nor the significant shortcomings noted in the representation agreement. Based on the case law discussed above, these discrepancies potentially warrant, at a minimum, a modest sanction. However, the Court does not consider the discrepancies, particularly when viewed in the context of Counsel's overall service in this case, to constitute a breach of his fiduciary duties to either the Debtor or the Court. Further, the Court appreciates Counsel's extensive cooperation in the Court's examination of these matters. Therefore, based upon the totality of the circumstances in this case, and further to the Court's statement at the December 18, 2020 hearing regarding the untimely disclosure, the Court will not penalize Counsel for the untimeliness or the discrepancies in this case. *Cf. id.* at *6 (citing Mem. Decision Re Debtor's Counsel's Appl. for Allowance of Att'y's Fees, *In re Simpson*, Case No. 13–00509, ECF No. 80, 2014 WL 2536079 (Bankr. D.D.C. June 5,

2014) (allowing hourly fees for extraordinary work upon the filing of an amended Rule 2016(b) disclosure but limiting fees for work deemed ordinary to the flat fee there). With the examination of Counsel's disclosures resolved, the Court must next consider the reasonableness of the fees requested in the Application.

### D. The Appropriate Metric for "Reasonable Compensation"

In this Circuit, to determine the reasonableness of fees, applications for compensation are analyzed under a three-part process that determines a "lodestar"—consisting of (1) the reasonable hourly rate for each person for whom compensation is requested, and (2) the number of hours reasonably expended by each such person—and then determines (3) any adjustments warranted to the lodestar. *See Makray v. Perez*, 159 F. Supp. 3d 25, 30 (D.D.C. 2016) (first citing *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015); and then citing *Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 61 (D.C. Cir. 2015)). Factors relevant to each person's reasonable hourly rate include, at minimum (1) the person's "billing practices," i.e., the actual non-reduced rate they have charged or could have realistically charged clients; (2) their skill, experience, and reputation[7] in bankruptcy; and (3) prevailing market rates in the community. *See* 11 U.S.C.

---

[7] The D.C. Circuit has incorporated these "*Johnson*" factors in its formulation of an attorney's reasonable market rate. See *Covington*, 57 F.3d at 1108 n.16 (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)). The "customary fee for like work" is another relevant *Johnson* factor. *Id.* The Court may incorporate other factors, including other *Johnson* factors, that it considers relevant to determining an attorney's reasonable hourly rate. Other *Johnson* factors that may bear on the "ability" or "skill" of an attorney, and thereby on the attorney's reasonable hourly rate, and/or on the reasonable hours may include the "novelty and difficulty" of the legal services performed, and the results obtained to the extent that those results reflect on the attorney's "skill and ability"—but it is important to avoid double-counting factors, such as where the "difficulty" or "results" of a specific case may be reflected in the attorney's rate ("skill" level) as well as in the hours expended. These factors can have an inverse relationship where, in certain cases, a junior attorney might achieve the same results as an experienced attorney but will expend more hours to do so; the lodestar fee may be the same for each attorney. *See Perdue*, 559 U.S. at 553, 555; *Makray*, 159 F. Supp. 3d at 43; *Flood v. District of Columbia*, 172 F. Supp. 3d 197, 207 (quoting *Perdue*, 559 U.S. at 553). "Since an attorney's total fee award is determined by multiplying the number of hours expended by the hourly rate, reducing the Laffey rates to reflect the brevity of the case improperly accounts for the length of the proceedings twice." *Flood*, 172 F. Supp. 3d at 208 (quoting *Merrick v. District of Columbia*, 134 F. Supp. 3d 328, 339 (D.D.C. 2015)).

§ 330(a)(3); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010); *Eley*, 793 F.3d at 100 (citing *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)); *Covington*, 57 F.3d at 1107-08. Between the prevailing rate and an attorney's customary rate, the local prevailing rate receives heavier weight. *See Makray*, 159 F. Supp. 3d at 30 (quoting *West v. Potter*, 717 F.3d 1030, 1034 (D.C. Cir. 2013), 37 (quoting *Perdue*, 559 U.S. at 551-52), 40-41 (first quoting *Save Our Cumberland Mountains, Inc. v. Hodel* ("*SOCM*"), 857 F.2d 1516, 1524 (D.C. Cir. 1988); and then quoting *Eley*, 793 F.3d at 105); *see also id.* at 44 (comparing *Perdue*, 559 U.S. at 551, with *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). Once the lodestar, incorporating the reasonable rate and reasonable hours, has been determined, there is a strong presumption that the fee based upon the lodestar itself is reasonable. *Id.* at 30 (quoting *West*, 717 F.3d. at 1034), 37-38 (quoting *Perdue*, 559 U.S. at 551-52, 553-54). Thus, adjustments *to* the lodestar, beyond specific refinements made in determining the reasonable rate and reasonable hours *within* the lodestar itself, must be carefully and specifically justified. *See Perdue*, 559 U.S. at 546, 551, 554 (eschewing the earlier *Johnson* methodology, but perhaps not its "factors" when used to determine rather than to depart from the lodestar, and directing a "strong presumption that the lodestar figure is reasonable, but [noting] that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee"); *Flood v. District of Columbia*, 172 F. Supp. 3d 197, 215 n.8 (D.D.C. 2016) (quoting *SOCM*, 857 F.2d at 1522); *Winston & Strawn LLP v. FDIC*, 894 F. Supp. 2d 115, 130 (D.D.C. 2012) (first quoting *Swedish Hospital v. Shalala*, 1 F.3d 1261, 1267 n.3 (D.C. Cir. 1993); and then quoting *Perdue*, 559 U.S. at 546). It is the further obligation of the court to exclude "hours that are excessive, redundant, or otherwise unnecessary."

*El-Tabech v. Clarke*, 616 F.3d 834, 842 (8th Cir. 2010) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). With that guidance in mind, the Court now turns to an examination of Counsel's time entries in the instant case.

As referenced above, Counsel is requesting in the Application approval of compensation through December 18, 2020 in the amount of $12,745.50. Counsel's Initial Disclosure indicated a flat fee of $7,500.00. The proposed flat fee was approximately two to three thousand dollars more than this Court routinely recognizes as "presumptively reasonable" and, therefore, Counsel should have been aware of the Court's policy and Bankruptcy Code requirements for detailed time entries in support of such fees in any fee application. However, notwithstanding this policy, the first Application lacked detailed time records. Moreover, time entries submitted in future Applications were not always delineated in tenths of an hour, but largely in quarters of an hour. *See, e.g.*, ECF No. 95-1; *see also In re GB Herndon & Assocs.*, 2013 WL 4510590, at *3-*4 (quoting Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. 330 ("**United States Trustees' Guidelines**"), 28 C.F.R. Pt. 58, App. A). After being informed in another matter that time records were required in tenths of an hour, Counsel amended his time records in this case to tenths of an hour, reducing much of his time by rounding down. ECF No. 100-1. The "contemporaneous" time records submitted by Counsel were put into categories, including "Main Case" and "Additional Legal Services Not Part of Main Case" broken down further into categories of related to various individual creditor issues.[8] *See id.*

---

[8] The categories utilized by Counsel are not compatible with the United States Trustees' Guidelines for applications for compensation. Furthermore, the rubric adopted by Counsel ensured that the Court's review of the Application was all that more difficult.

Under the category of "Main Case," Counsel requests approval of 7.2 hours for $2,844.00, clearly much less than the $7,500.00 initially disclosed and requested. However, not included in this category are general chapter 13 practice services such as reviewing plan objections, negotiations with secured creditors regarding plan amendments, or motions to sell. Instead, Counsel has included those services in the "Additional Legal Services Not Part of Main Case" category and are considered within those categories in this Order. As presented, the "Main Case" fees requested are reasonable for the services listed in that category and the Court will allow those fees in full in the amount of $2,844.00.[9] Thus, the Court next turns to the "Additional Legal Services Not Part of Main Case" category of services.

The four (4) subcategories under "Additional Legal Services Not Part of Main Case" consist of services rendered by Counsel with respect to issues raised by creditors of the Debtor. As stated *supra*, many of these services would ordinarily fall within "Main Case" services related to negotiation and confirmation of a plan. However, Counsel has segregated them as additional services for the Debtor and the Court will treat them independently for purposes of the Application. Initially, the Court notes that the detailed time entries contain many entries for services rendered by Counsel that could and should have been rendered by a paraprofessional, associate, or otherwise billed to the Debtor at a billing rate lower than Counsel's rate of $395.00 an hour and thus justify a reduction in the requested compensation. *In re Starner*, No. 14-20930-WIL, 2017 Bankr. LEXIS 73, at *11 (Bankr. D. Md. Jan. 11, 2017) ("Although this Court is not suggesting that [counsel]

---

[9] The fees included in the "Main Case" only cover services rendered through the date of the Application and do not provide for any future services related to the completion of the Debtor's case. This Order is without prejudice to Counsel filing a subsequent application for compensation for services rendered through the completion of the Debtor's case. Given the lack of details in the "Main Case" time entries in all but the Praecipe, the Court also questions just how contemporaneously Counsel maintained his time records but does not penalize Counsel for both his categories and its questions as to the contemporaneous recordation of said time.

hire a paralegal, many attorneys who do not have paralegals will reduce their fee or delegate the task to an associate with a lower hourly rate when performing administrative tasks such as these."). "At least absent justifying circumstances . . . '[w]hen an experienced attorney does clerk's work, he or she should be paid clerk's wages.'" *In re Busy Beaver Bldg. Ctrs.*, 19 F.3d at 855 (quoting *In re The Vogue*, 92 B.R. 717, 718 (Bankr. E.D. Mich. 1988); s*ee also Taylor v. District of Columbia*, 205 F. Supp. 3d 75, 91 (D.D.C. 2016) (reducing the rate for paralegal services where the work performed was primarily clerical); *Merrick v. District of Columbia*, 134 F. Supp. 3d 328, 341 (D.D.C. 2015) ("As a general matter, clerical and administrative services amount to non-billable overhead. . . . [S]everal courts in this District have adopted [a] middle-ground approach . . . by awarding solo practitioners and small-firm attorneys' fees for clerical work at a reduced rate"); *Denton v. PennyMac Loan Servs., LLC*, 252 F. Supp. 3d 504, 522 (E.D. Va. 2017) (allowing tiered rates for a partner, associate, and paralegal); *Rooths v. District of Columbia*, 802 F. Supp. 2d 56, 63 (D.D.C. 2011) (noting an hourly rate for clerical services at a fraction of those for legal services); *In re Parrilla*, 530 B.R. at 21-22 (allowing a reduced rate for paralegals but none for clerical support where that is factored as overhead into the attorney's rate). *But see Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019) ("[W]hile district courts have the legal authority and discretion to. . . reduce an attorney's hourly rate for time spent on clerical tasks . . . a district court is not required to make such reductions."); *In re Snow*, 603, B.R. 114, 122 (Bankr. W.D. Okla. 2019) (allowing an attorney to bill time for clerical tasks under a flat fee incorporating a "blended" rate for the attorney).

The Court, in a review of all the services rendered as set out in the four (4) subcategories in the Application, finds that a reduction of these "additional" category charges is necessary to

account for these issues. The Court will approve 15.2 hours of services, or $6,004.00 of compensation in addition to the $2,844.00 approved under the "Main Case" category, for a total of $8,848.00.

Therefore, it is **ADJUDGED, ORDERED, AND DECREED** that:

1.  Counsel is allowed $8,848.00 in fees and $145.00 in expenses, for total compensation of $8,993.00 through December 18, 2020.

2.  Counsel is authorized to draw on its retainer to pay such amounts.

3.  The Chapter 13 Trustee is authorized and directed to pay the remaining balance of $4,504.00 through the Debtor's confirmed chapter 13 plan.

[Signed and dated above.]